[No. G040560. Fourth Dist., Div. Three. Aug. 21, 2009.]

In re SPENCER S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
SPENCER S., Defendant and Appellant.

## COUNSEL

Robert S. Hanna, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Gary W. Schons, Chief Assistant Attorney General, Peter Quon, Assistant Attorney General, Chandra E. Appell and Lynne McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

IKOLA, J.—Under Welfare and Institutions Code section 790 et seq., which govern deferred entry of judgment (DEJ), first-time juvenile felons may have their charges dismissed and records sealed upon successfully completing probation.[1] Spencer S. (minor), a first-time juvenile misdemeanant, contends the DEJ law violates equal protection principles by denying him the benefits afforded juvenile felons. We conclude there is a rational basis for the DEJ law's focus on juvenile felons. Accordingly, the DEJ law does not violate the equal protection clauses of the state and federal Constitutions.

Minor also contends a probation condition forbidding him from associating with persons he knows to be on probation is unconstitutionally overbroad and must therefore be modified. For reasons explained below, we disagree.

Accordingly, we affirm the judgment.

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

## FACTS

At a party on August 25, 2007, a "fight broke out" between about 25 people (including minor) and a male gang member named Trevor, during which the group of people attacked Trevor, threw bottles and chairs at him, and chased him into the street. Amanda S., a good friend of Trevor, tried to break up the fight by "pushing people out of the way." According to Amanda, when she "shoved" minor, he "socked [her] in the face." Christina J., Amanda's friend, saw minor throw Amanda on the ground, get on top of her, and hit her. Christina pushed minor off Amanda. According to Christina, minor got up and hit Christina on the cheek. According to minor, he never hit either girl.

In a pretrial report, the probation department stated minor had been "referred to the Delinquency Prevention Program [almost four years earlier] for disruptive behavior and [being] unable to function properly in a regular school setting." He was currently attending a high school. He had participated in family counseling seven years earlier and in fourth grade had been "caught with a marijuana like substance." The probation department concluded minor needed "structure in his life and a higher level of supervision [than could] be provided if placed on a diversion program." The probation department therefore referred the matter to the district attorney.

The People petitioned to have minor declared a ward of the court under section 602 on grounds he committed misdemeanor assault (Pen. Code, § 240) and misdemeanor battery (Pen. Code, § 242) on both Amanda and Christina.

Minor denied all allegations in the petition and never requested the court to determine his eligibility for DEJ. At the jurisdictional hearing, defense counsel argued minor acted in self-defense.

The juvenile court found minor did *not* act in self-defense and found the petition's allegations to be true beyond a reasonable doubt. It declared minor a ward of the court (§ 602) and placed him on formal, supervised probation with conditions. Those conditions included a prohibition forbidding minor from associating "with anyone who [he knows] to be on probation . . . ."

## DISCUSSION

*Because Minor Is a Misdemeanant, the Court Did Not Err*
*by Failing to Consider Whether He Was Eligible for DEJ*

Minor argues that "limiting DEJ to minors charged with felonies violates his right to equal protection of the laws." He concludes the court erred by failing to determine whether he was eligible for DEJ.

1. *Minor may raise the equal protection issue for the first time on appeal*

On appeal, minor questions for the first time the constitutionality of the DEJ law's exclusion of juvenile misdemeanants from its coverage. The People contend minor has forfeited his right to raise the question on appeal because he (1) contested the petition's allegations, and/or (2) failed to object below.

As to the People's contention minor "forfeited [DEJ] by contesting [the] petition," the People cite no section of the DEJ law that requires a minor, in order to retain a claim to DEJ, to admit a petition's allegations even before receiving notification he or she is eligible for DEJ. We review the relevant DEJ provisions and rules on whether and when a minor (who is otherwise eligible for DEJ) must admit the petition's allegations.

 Section 790, subdivision (b) requires a prosecutor, upon determining that a minor is eligible for DEJ, to provide the minor with information about DEJ. Under section 791, subdivision (a)(3), the prosecutor's written notification to the minor must include a "clear statement that, in lieu of jurisdictional and disposition hearings, the court may grant [DEJ] with respect to any offense charged in the petition, *provided that the minor admits each allegation contained in the petition* and waives time for the pronouncement of judgment . . . ." (*Ibid.*, italics added.) Under section 791, subdivision (b), "[i]f the minor consents and waives his or her right to a speedy jurisdictional hearing, the court may refer the case to the probation department *or* the court may summarily grant [DEJ] if the minor admits the charges in the petition and waives time for the pronouncement of judgment."[2] (Italics added.) "The court may grant DEJ to the minor summarily under appropriate circumstances ([Cal. Rules of Court, former] rule 1495(d)), and if not must conduct a hearing at which 'the court *shall* consider the declaration of the prosecuting attorney, any report and recommendations from the probation department, and any other relevant material provided by the child or other interested parties.' " (*In re Luis B.* (2006) 142 Cal.App.4th 1117, 1123 [48 Cal.Rptr.3d 581] (*Luis B.*).)

From the foregoing, it is clear that a minor must first admit a petition's allegations in order to obtain a *summary* grant of DEJ. In addition, because

---

[2] In his summary of this subdivision, Witkin adds a comma after the words "probation department": "On the minor's consent and waiver of the right to a speedy jurisdiction hearing, the court may refer the case to the probation department, or may summarily grant deferred entry of judgment if the minor admits the charges and waives time for pronouncement of judgment." (10 Witkin, Summary of Cal. Law (10th ed. 2005) Parent and Child, § 891, p. 1085.)

the prosecutor's notice must inform the minor that he or she must admit the petition's allegations in lieu of a jurisdictional hearing, we can infer with respect to *nonsummary* grants that the minor must make such an admission sometime prior to the court's grant of DEJ at the hearing on the minor's suitability for DEJ.[3]

Here, however, because the prosecutor never initiated the prerequisite procedure for the court to consider granting DEJ to minor, minor never had an opportunity to admit the petition's allegations in exchange for being considered for DEJ. Under these circumstances, minor's denial of the petition's allegations at the jurisdictional hearing does not foreclose his DEJ claim on appeal.

The People also assert minor forfeited his equal protection claim by failing to object below. (*People v. Burgener* (2003) 29 Cal.4th 833, 860–861, fn. 3 [129 Cal.Rptr.2d 747, 62 P.3d 1]; see also *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [54 Cal.Rptr.2d 27].) It is true that a constitutional right "may be waived either directly or by inaction." (*People v. Workman* (1953) 121 Cal.App.2d 533, 535 [263 P.2d 458].) Nonetheless, appellate courts have discretion to address constitutional issues raised on appeal (*Punsly v. Ho* (2001) 87 Cal.App.4th 1099, 1103 [105 Cal.Rptr.2d 139]), particularly where the issue presented is "a pure question of law" turning on undisputed facts (*In re Samuel V.* (1990) 225 Cal.App.3d 511, 515 [277 Cal.Rptr. 14]) or when " 'important issues of public policy are at issue . . .' " (*People v. Halvorsen* (2007) 42 Cal.4th 379, 428 [64 Cal.Rptr.3d 721, 165 P.3d 512]). Minor points out he "has not found a reported case" involving an equal protection challenge to the DEJ law. We are cognizant, too, that if we fail to address this issue now, it may return as a habeas corpus petition alleging ineffective assistance of counsel. We therefore exercise our discretion to consider the merits of minor's contention that the DEJ law violates the equal protection clauses of the California and federal Constitutions.

---

[3] In *In re Kenneth J.* (2008) 158 Cal.App.4th 973 [70 Cal.Rptr.3d 352], the Court of Appeal held that a trial court need not consider DEJ for a minor "who is advised of his DEJ eligibility, who does not admit the charges in the petition or waive a jurisdictional hearing, and who does not show the least interest in probation, but who insists on a jurisdictional hearing in order to contest the charges." (*Id.* at pp. 979–980.) In *In re Usef S.* (2008) 160 Cal.App.4th 276 [72 Cal.Rptr.3d 612] (*Usef S.*), the appellate court held that "where the minor declines to admit each allegation in the petition, as [section 791,] subdivision (a) requires, no duty on behalf of the juvenile court arises under subdivision (b) to refer the case to the probation department or to summarily grant DEJ . . . ." (*Id.* at p. 285.) Thus, with respect to nonsummary grants of DEJ, *Usef S.* interprets the statute to require a minor (who wishes to remain eligible for DEJ) to admit the petition's allegations even before he or she has seen a probation department recommendation on whether the court should grant the minor DEJ.

### 2. *The DEJ law does not violate minor's right to equal protection*

■ "The DEJ [law was] enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of 1998, in March 2000. The [DEJ law] provide[s] that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed." (*Martha C. v. Superior Court* (2003) 108 Cal.App. 4th 556, 558 [133 Cal.Rptr.2d 544].)

To come within the DEJ law's ambit, a minor must be a first-time felony offender charged with a crime not listed in section 707, subdivision (b) (serious or violent offenses creating presumption of unfitness for juvenile jurisdiction) or Penal Code section 1203.06 (crimes rendering offender ineligible for probation).[4] (§ 790, subd. (a).) If a minor meets the eligibility requirements for DEJ, the prosecuting attorney must provide notice thereof to the minor and the trial court must "conduct the necessary inquiry and exercise discretion to determine whether" the minor is suitable for DEJ. (*Luis B., supra*, 142 Cal.App.4th at p. 1123.) A court may deny DEJ to a minor otherwise eligible if it deems the minor unsuitable for rehabilitation. (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 607 [131 Cal.Rptr.2d 160].)

Minor asserts there is no rational basis for denying misdemeanants the benefits of the DEJ law, and therefore the DEJ law violates the state and federal Constitutions' equal protection guarantees.

■ When a statute is challenged on equal protection grounds, a court's initial inquiry is twofold. It must first determine whether " 'the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].)

If the statute affects similarly situated groups unequally, the court must then decide whether to apply the strict scrutiny or rational basis test in analyzing the statute's constitutionality. "For most legislation . . . a court will

---

[4] To be eligible, a minor must also be at least 14 years old at the time of the hearing, never have been committed to the Division of Juvenile Justice, and never have suffered a revocation of probation. (§ 790, subd. (a).)

apply the rational basis test. The 'standard formulation of the test for minimum rationality' [citation] is whether the classification is 'rationally related to a legitimate governmental purpose.' " (*Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913 [13 Cal.Rptr.2d 245, 838 P.2d 1198].) "A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' " (*Reed v. Reed* (1971) 404 U.S. 71, 76 [30 L.Ed.2d 225, 92 S.Ct. 251].)

■ " '[A] reviewing court may correct a discriminatory classification by invalidating the invidious exemption and thus extending statutory benefits to those whom the Legislature unconstitutionally excluded.' " (*Sykes v. Superior Court* (1973) 9 Cal.3d 83, 92 [106 Cal.Rptr. 786, 507 P.2d 90].) "[A] statute, once duly enacted, 'is presumed to be constitutional. Unconstitutionality must be clearly shown, and doubts will be resolved in favor of its validity.' " (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1086 [17 Cal.Rptr.3d 225, 95 P.3d 459].)

As to the first prong of the inquiry described above, minor bears the burden of showing, as a foundational matter, that the challenged classification affects similarly situated groups unequally. (*People v. Wutzke* (2002) 28 Cal.4th 923, 943 [123 Cal.Rptr.2d 447, 51 P.3d 310].) Because we conclude the DEJ law does not violate equal protection principles, we will assume, without deciding, that juvenile felons and juvenile misdemeanants are similarly situated for purposes of the DEJ law.

As to the second prong, minor acknowledges his claim is subject to the rational basis standard of review. (*People v. Edwards* (1991) 235 Cal.App.3d 1700, 1706 [1 Cal.Rptr.2d 631] ["equal protection challenges based upon statutory ineligibility for diversion are reviewed under the rational basis standard . . ."].) He contends that "provisions which give preference to felons over misdemeanants in rehabilitative-related benefits" cannot survive a rational basis analysis.

For this proposition, minor relies on *Newland v. Board of Governors* (1977) 19 Cal.3d 705 [139 Cal.Rptr. 620, 566 P.2d 254] (*Newland*), where the defendant college board denied the plaintiff a community college teaching credential because he was a misdemeanant and ineligible for a certificate of rehabilitation. (*Id.* at p. 707.) The board based its denial on Education Code former section 13220.16 (the college credential statute), which "barred issuance of a credential to anyone convicted of a 'sex offense' " (*Newland*, at p. 707) unless the applicant, inter alia, "applied for or obtained a certificate of rehabilitation." (*Ibid.*) Such certificates, however, were "limited to convicted

*felons.*" (*Ibid.*) Our Supreme Court concluded "that this rather startling statutory preferential treatment for felons as contrasted with misdemeanants denies misdemeanants the equal protection of the laws. Consequently the statutory requirement for a certificate of rehabilitation cannot constitutionally be applied to deny plaintiff, a misdemeanant, a community college credential." (*Id.* at p. 708.)

■ *Newland* observed that no "particular verbal formula" for the rational basis test exists. (*Newland, supra,* 19 Cal.3d at p. 711.) "Some decisions require that the classification ' "bear some rational relationship to a conceivable legitimate state purpose" ' [citation]; others, that the classification must rest upon 'some ground of difference having a fair and substantial relation to the object of the legislation' . . . ." (*Ibid.*) At bottom, however, "[a]ll of the formulas require the court to conduct 'a serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals' . . . ." (*Ibid.*) Accordingly, application of the rational basis test always requires "an identification of the purpose of" the statute. (*Ibid.*)

The purpose of the college credential statute in *Newland* was "not further to punish the miscreant, but to protect the students, faculty and others who might be harmed by the employment of an unfit teacher." (*Newland, supra,* 19 Cal.3d at pp. 711–712.) But the statute had "the Kafka-like perverse effect of providing that a [felony sex offender] who applies for a certificate of rehabilitation and who is otherwise fit, can obtain certification to teach in the community college system but that an otherwise fit [misdemeanor sex offender] is forever barred." (*Id.* at p. 712.) "This statutory discrimination against misdemeanants can claim no rational relationship to the protective purpose of" the statute. (*Ibid.*) "The Legislature could not possibly or sensibly have concluded that misdemeanants, as opposed to felons, constitute a class of particularly incorrigible offenders who are beyond hope of rehabilitation." (*Ibid.*) *Newland* concluded that "the statutory classification discriminating against misdemeanants, lacking a rational relationship to the legislative goals, denies misdemeanants the equal protection of the laws." (*Id.* at p. 713; see also *Gebremicael v. California Com. on Teacher Credentialing* (2004) 118 Cal.App.4th 1477, 1488 [13 Cal.Rptr.3d 777] (*Gebremicael*) [refusing to construe statute to impose "ludicrous" and "anomalous result of barring plaintiff, now convicted of a misdemeanor, and who never served time in state prison, from ever obtaining a [teaching] credential but allowing a person convicted of a straight felony who served time in state prison to obtain a credential"].)

Relying on *Newland* and *Gebremicael,* minor argues the categorical exclusion of juvenile misdemeanants from the DEJ law's benefits is irrational because the purpose of the DEJ statutes is "to aid rehabilitation of minors,

while protecting the public from more dangerous ones." He concludes, as did *Newland*, that the Legislature could not have sensibly considered misdemeanants to be "beyond hope of rehabilitation." (*Newland, supra,* 19 Cal.3d at p. 712.) As we shall explain, however, minor has stated the purpose of the DEJ law too broadly.

The voters' stated purposes in adopting the DEJ law can be found in Proposition 21's uncodified findings and declarations: "Juvenile court resources are spent disproportionately on violent offenders with little chance to be rehabilitated. If California is going to avoid the predicted wave of juvenile crime in the next decade, greater resources, attention, and accountability must be focused on less serious offenders, such as burglars, car thieves, and first time non-violent felons who have potential for rehabilitation. This act must form part of a comprehensive juvenile justice reform package which incorporates major commitments to already commenced 'at-risk' youth early intervention programs and expanded informal juvenile court alternatives for low-level offenders. These efforts, which emphasize rehabilitative protocols over incarceration, must be expanded as well under the provisions of this act, which requires first time, non-violent juvenile felons to appear in court, admit guilt for their offenses, and be held accountable, but also be given a non-custodial opportunity to demonstrate through good conduct and compliance with a court-monitored treatment and supervision program that the record of the juvenile's offense should justly be expunged." (Voter Information Guide, Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2, subd. (j), p. 119.)

To put these legislative goals in context, Proposition 21's findings and declarations described the following state of affairs: (1) a reverse trend of overall crime declining, but juvenile crime rising; (2) the expectation that the juvenile population would "grow substantially by the next decade"; (3) the realization that "violent and repeat serious juvenile offenders" were not good candidates for "rehabilitative/treatment" policies; and (4) the conclusion that "[d]ramatic changes [were] needed in the way we treat juvenile criminals, criminal street gangs, and the confidentiality of the juvenile records of violent offenders if we are to avoid the predicted, unprecedented surge in juvenile and gang violence." (Voter Information Guide, Primary Elec., *supra,* text of Prop. 21, § 2, subds. (a), (d), (i), (k), p. 119.)

■ Thus, a primary purpose of the DEJ law was to curtail the perceived coming wave of juvenile violence by (1) identifying nonviolent juvenile offenders who are at risk of escalating their antisocial behavior, yet who remain candidates for rehabilitation, and (2) targeting scarce resources toward treating and rehabilitating these individuals. The electorate rationally selected the class of first-time nonviolent juvenile felons as the juvenile offenders

most at risk of being swept up into the criminal wave and yet who retained the potential to be reformed.

In addition, the goals of the DEJ law must be viewed in the context of Proposition 21's establishment of tougher treatment for juvenile *felons*. Proposition 21 was part of a national wave of reform of the juvenile justice system resulting from a growing perception that the system's *rehabilitative* effort was failing and therefore "get-tough legislation" was appropriate to *punish* certain juvenile offenders. (Comment, *The Impossible Predicament of Gina Grant* (1997) 44 UCLA L.Rev. 913, 920–921.) Thus, in the aftermath of Proposition 21, informal probation pursuant to programs of supervision is generally unauthorized for juvenile felons aged 14 and older. (§ 654.3, subd. (h).) A juvenile felon's complete criminal history is reported to the Department of Justice, which retains "this information and make[s] it available in the same manner as information" collected under Penal Code section 13100 et seq. (providing for efficient recording and dissemination of information for speedy access to policing agencies and courts). (§ 602.5.) And, subject to age restrictions, a juvenile charged with a felony, who has already suffered two prior felony findings, is presumed unfit for juvenile court jurisdiction, a presumption that may only be overcome with evidence. (§ 707, subd. (a)(2).)

■ In light of the harsher treatment of juvenile felons, the DEJ law carved out a diversion for first-time juvenile felons who might benefit from the traditional goals of treatment and rehabilitation. Thus, post-Proposition 21, first-time juvenile felons, though no longer eligible for programs of supervision under informal probation, may be granted probation under the DEJ law. (§ 794.) If a minor performs satisfactorily under the DEJ law, his or her records are immediately sealed; however, if the minor fails to perform satisfactorily, his or her complete criminal history is immediately reported to the Department of Justice. (§ 793.) In a similar carrot-and-stick approach, the DEJ law provides that if the minor performs satisfactorily under the program, the charges are dismissed; however, "if the minor fails to comply with the terms of the program and judgment is entered, the offense may serve as a basis for a finding of unfitness pursuant to subdivision (d) of Section 707 [authorizing a prosecutor to file charges in criminal court], if the minor commits two subsequent felony offenses." (§§ 791, subd. (a)(6), 793.) Thus, the DEJ law's benefits were rationally restricted to juvenile felons because of the severe consequences otherwise applicable to them.

Two further reasons justify the DEJ law's exclusion of juvenile misdemeanants from its benefits. First, given the predicted surge in juvenile crime and the ineligibility of juvenile felons for informal probation, juvenile felons could significantly clog the courts without the DEJ law's expedited method of

disposition. Juvenile misdemeanants, in contrast, are candidates for programs of supervision that may not even require a court appearance. (§ 654; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Crimes, § 116, p. 176.)

Second, juvenile misdemeanants are eligible for records sealing under several other statutes. (Pen. Code, §§ 1203.45 [juvenile misdemeanant probationers], 851.7 [juvenile misdemeanant arrestees]; Welf. & Inst. Code, §§ 781 [minors], 781.5 [factually innocent minors]; Health & Saf. Code, § 11361.5 [marijuana offenses].) Records sealing under Penal Code section 1203.45 is unavailable to minor, however, because that statute "does not apply to a person convicted of more than one offense," even if both offenses "occurred in the same action" unless one of "the offenses includes the other" or is a motor vehicle offense. (*Id.*, subd. (d).) Nevertheless, another avenue is available to minor. Under section 781, now that he is age 18 and once he completes his term of probation, he may petition the court to seal the records of his offenses, and the court may grant the petition upon finding (1) that after successfully completing probation, minor has not been convicted of a felony or a misdemeanor of moral turpitude, and (2) "that rehabilitation has been attained to the satisfaction of the court . . . ." (§ 781, subd. (a).)[5]

■ We conclude the DEJ statutes do not violate minor's right to equal protection of the laws. The classification of nonviolent juvenile felons rationally relates to the law's purpose of forestalling or minimizing a predicted wave of juvenile crime by "getting tougher" on violent juvenile felons while, at the same time, targeting scarce resources toward rehabilitating nonviolent juvenile felons who can benefit from "education, treatment, and rehabilitation." (§ 791, subd. (b).)

*The Probation Condition Restricting Minor's Association with Persons Known to Him to Be on Parole Is Not Unconstitutionally Overbroad*

Minor contends the probation condition forbidding him from associating with any person known to him to be on probation is overbroad and violates his First Amendment right to freedom of association. Although minor failed to object in the juvenile court to the imposition of this condition, he may raise his constitutional claim here. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888–889 [55 Cal.Rptr.3d 716, 153 P.3d 282].) The asserted error is a " ' "pure

---

[5] We are aware that the privilege of records sealing has been treated as a fundamental interest for equal protection purposes by two cases. (*People v. Pruett* (1975) 51 Cal.App.3d 329 [124 Cal.Rptr. 273]; *People v. Ryser* (1974) 40 Cal.App.3d 1, 7–8 [114 Cal.Rptr. 668].) Minor does not raise this contention. In *T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, 783 [94 Cal.Rptr. 813, 484 P.2d 981], our Supreme Court applied the rational basis test to a records sealing statute.

question[] of law that can be resolved without reference to the particular sentencing record developed in the trial court" ' " (*id.* at p. 889), and is "easily remediable on appeal by modification of the condition" (*id.* at p. 888). In contrast, a juvenile defendant "who fails in the trial court to challenge a condition of probation on the ground of unreasonableness" forfeits the claim. (*Id.* at p. 883, fn. 4, italics omitted.) We thus address the merits of minor's constitutional claim.

■ Probation conditions for minors "may be broader than those pertaining to adult offenders. This is because juveniles are deemed to be more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed." (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941 [93 Cal.Rptr.2d 212].) Under section 730, subdivision (b), when the juvenile court places a section 602 ward under a probation officer's supervision or commits the ward to a probation officer's care, custody, and control, the "court may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).) Similarly, under section 727, subdivision (a), when a minor is adjudged a section 602 ward of the court, "the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor . . . ." A juvenile court's imposition of probation conditions is reviewed for abuse of discretion. (*In re Juan G.* (2003) 112 Cal.App.4th 1, 7 [5 Cal.Rptr.3d 34].)

■ Minor relies on *People v. O'Neil* (2008) 165 Cal.App.4th 1351 [81 Cal.Rptr.3d 878] (*O'Neil*) and *People v. Hackler* (1993) 13 Cal.App.4th 1049 [16 Cal.Rptr.2d 681] (*Hackler*) to support his constitutional challenge to the condition restricting his association with probationers. In *O'Neil*, the Court of Appeal stated that a " 'limitation on the right to associate which takes the form of a probation condition is permissible if it is "(1) primarily designed to meet the ends of rehabilitation and protection of the public and (2) reasonably related to such ends." ' " (*O'Neil*, at p. 1356.) The appellate court clarified, however, that its decision dealt "solely with the conditions of adult probation. Conditions of juvenile probation may confer broader authority on the juvenile probation officer than is true in the case of adults [citations]." (*Id.* at p. 1358, fn. 4.)

In *O'Neil*, the defendant (convicted of possession for sale of narcotics) challenged a probation condition "forbidding him from associating with persons designated by his probation officer." (*O'Neil, supra,* 165 Cal.App.4th at p. 1354.) The Court of Appeal held the probation condition, as written, was "too broad" (*ibid.*) and identified the following problem with the wording: "[A]lthough the [trial] court authorized the probation officer to designate

those with whom defendant could not associate, it did not in any way define the class of persons who could be so designated. While the [trial] court may well have anticipated that the probation officer would specify individuals known to be using or dealing in illicit drugs . . . , 'this factor should not be left to implication.' " (*Id.* at p. 1358.) Thus, the condition was "unlimited and would allow the probation officer to banish defendant by forbidding contact with his family and close friends, even though such a prohibition may have no relationship to the state's interest in reforming and rehabilitating defendant." (*Ibid.*)

Relying on *Hackler*, minor argues that "probation conditions which stigmatize a probationer, and interfere with his ability to carry on activities unrelated to future criminality are constitutionally overbroad." (See *Hackler, supra*, 13 Cal.App.4th at p. 1052.) In *Hackler*, the probation "condition required the [defendant], convicted of shoplifting beer from a supermarket, to wear an outer garment bearing a bold, printed statement of his status as a felony theft probationer" whenever he was away from home. (*Ibid.*) Thus, the condition impinged on the defendant's constitutional right to privacy. (*Id.* at p. 1058.) The Court of Appeal stated: " 'Where a condition of probation requires a waiver of constitutional rights, the condition must be narrowly drawn. To the extent it is overbroad it is not reasonably related to a compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights.' " (*Ibid.*) The appellate court found the condition requiring the defendant to broadcast "his status as a convicted thief" (*id.* at p. 1059), even in venues where shoplifting was impossible, had merely an incidental relationship to "the crime for which he was convicted" (*id.* at pp. 1059–1060) and scant "bearing on [his] future criminality" (*id.* at p. 1060), and was therefore unreasonably overbroad (*ibid.*).

Based on *O'Neil* and *Hackler*, minor contends the challenged condition should be modified to allow him to associate with probationers "in structured environments including school and formal activities, or with persons on all but formal probation." He asserts his inability to associate with known probationers at school or work, or on sports teams (without obtaining the court's permission) will stigmatize him and foreclose him from positive activities.

Nonetheless, the restriction on minor's association with probationers is sufficiently related to the goals of (1) promoting his rehabilitation and reformation, and (2) protecting the public. Minor's first and only misdemeanor resulted from his presence at a party where a juvenile mob fought with an alleged gang member. The condition is especially valid in light of the state's authority over juvenile wards and a ward's concomitant circumscribed constitutional rights.

## DISPOSITION

The judgment is affirmed.

Moore, Acting P. J., and Aronson, J., concurred.