Filed 3/11/14  In re V.R. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re V.R., et al., Persons Coming Under the Juvenile Court Law. | B249100<br>(Los Angeles County Super. Ct. No. CK90004) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>L.G.,<br><br>      Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Valerie Skeba, Juvenile Court Referee.  Affirmed.

Law Office of Lisa A. Raneri and Lisa A. Raneri, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Peter Ferrera, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

L.G (father) appeals from a March 29, 2013 exit order reducing father's monitored visitation from three hours per week to two hours per month. Father contends he did not receive notice that the court might reduce visitation when it terminated jurisdiction. Father also contends that an addendum to the exit order erroneously states that father's visits must be supervised because he had not made substantial progress in court-ordered programs, even though the court never ordered him to participate in those programs. We conclude father forfeited the issue of notice because his counsel appeared and did not object to the adequacy of notice. We further conclude the addendum did not constitute an abuse of discretion, and any error in the addendum is harmless.

**FACTS**

In January 2012, the Department of Children and Family Services (Department) took four-year-old V.R. and two-year-old D.R. into protective custody and filed a petition alleging the children were at substantial risk of neglect under Welfare and Institutions Code section 300, subdivisions (b) and (j).[1] The Department found the children living with mother in unsanitary and unhygenic conditions; they had rashes with open wounds and scabs on their bodies from eczema, chicken pox, or bed bugs; and V.R's teeth were decaying and broken. Father had only learned the children were his about six months earlier and expressed concern that mother was using drugs and could not adequately care for the children. At the time the petition was filed, the Department was unaware that father had two other dependency cases involving sustained counts regarding father's emotional instability, domestic violence, criminal history, diagnosis of bipolar disorder, and refusal to take medication. The court sustained allegations relating to mother's history of drug use and her neglect of the children and ordered mother to participate in drug rehabilitation and a 12-step program, as well as parenting classes and mental health

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

counseling. It also ordered parenting education classes for father, and individual counseling for the children if helpful. The court placed the children with father and granted mother monitored visitation.

On June 5, 2012, the Department advised the court for the first time that father had two open dependency cases involving children by different mothers. One case involved sustained allegations that father acted violently towards the mother in that case and demonstrated emotional problems that rendered him unable to care for the children, endangering the children's physical and emotional health. The second case involved sustained allegations that father's failure to take medications after being diagnosed as bipolar placed the children at risk. The Department's report also raised concerns based on statements and actions by father in the current dependency proceeding. Father repeatedly called the social worker claiming he would not allow visits with mother, and then called back to apologize for his behavior and agree to visitation. He believed that mother did not deserve the children. He felt that mother was out to get him and had told people he was a child molester. On one occasion, he cursed a passer-by while he was on the phone with the social worker. The social worker asked him to stop because the children were with him, but he continued. He later called back to apologize and said he would take an anger management class if needed to satisfy the social worker. He claimed mother had broken his car window because witnesses saw a "skinny female." He later apologized saying the suspect was in fact a skinny male, but he felt the need to accuse mother because he was angry with her.

Between June and September, mother was fully compliant with the court's orders and was successful in all her programs. She attended drug rehabilitation, parenting classes, and mental health counseling. She also consistently tested negative for drugs. Her visits with the children went well, and she sought unmonitored visitation, which father refused to allow. At a hearing on June 13, 2012, the court granted mother's section 388 petition seeking unmonitored visits with the children. Based on the information contained in the Department's June 5, 2012 report, the court suggested the Department file a section 388 petition if it wanted the court to order anger management classes, but

3

opined that a section 387 petition (to remove the children from father) may be warranted. Father began receiving family preservation services on June 25, 2012.

By September, mother remained complaint with all court orders and was close to obtaining her own housing through a Section 8 housing program. The Department reported on September 4, 2012, that father completed a parenting class in July and was taking classes in anger management. However, father's erratic and accusatory behavior towards mother led the Department to question whether father should retain primary physical custody of the children. The Department recommended placing children with mother after they confirmed that mother had a suitable residence. On September 25, 2012, the court adopted the Department's recommendation, placing children in "home of parent," giving mother primary physical custody and father visitation with the children every other weekend, and one evening on alternate weekends. The court ordered both parents to comply with family preservation services.

On September 26, 2012, just one day after the court made its order, father told a social worker he would not be following the visitation order, and that the only way to protect mother from going back to partying was if she had the children. On October 1, 2012, father opted out of the family preservation program, stating he did not want to be any part of the Department's decision to let the children live with mother. Father became increasingly suspicious and paranoid during the month of October. He followed mother's cousin to learn where mother lived and accused the Department and mother of lying to him about the children's whereabouts. Based on father's increasing mental and emotional instability, and on the fact that father's reunification services had been discontinued in two earlier dependency cases, the Department filed a subsequent petition under section 342, alleging the children were at risk as the result of father's mental and emotional problems and failure to take his psychotropic medication as prescribed. On October 11, 2012, the court detained the children from father, placed them with mother, and granted father monitored visitation for a minimum of three hours per week. The court ordered the Department to provide father referrals to individual counseling and domestic violence counseling, and father to have a mental health evaluation.

4

In late October 2012, father was extremely agitated, telling the social worker the children had been illegally removed from his care, that he had fired the previous social worker on the case and hired a private investigator to prove mother was still using illegal drugs. He let the social worker know he had a lot of power in the gang community, waiting for his orders to take revenge. When the social worker asked father to explain what he meant, he did not elaborate and said he was not posing a threat. During a monitored visit on October 29, 2012, the social worker reminded father the court wanted him to have a mental health evaluation, but father said he was not interested.

A therapist interviewed and evaluated father on October 30, 2012, noting that father's mood was suspicious and anxious, his speech rambling, his affect exaggerated, his judgment inappropriate, and he had poor impulse control, impaired concentration, and inadequate insight. The therapist diagnosed father with Paranoid Personality Disorder and Schizotypal Personality Disorder. She expressed concern regarding father's mental health and questioned father's capacity to safely care for the children. "With the paranoia that [father] displays and the anger that he has associated with it[,] there is a concern and a high risk that [father] may be impulsive and unpredictable in his actions." The therapist opined that father felt "conspired against" and "may not have the best interest of the children in mind in an effort to maintain self-preservation." The therapist recommended a more formal evaluation under Evidence Code section 730, an evaluation for psychiatric medication, and that father attend therapy and classes in anger management and parenting.

Father admitted on October 31, 2012, that he had taken Depakote for four years for bipolar disorder, but he stopped taking the medication because it interfered with his ability to function on a daily basis and felt much better when he was off the medication.

Father only visited the children once between November 2012 and March 2013. The visit went well, but the Department was unable to schedule any other visits. During the same time frame, father complained mother was neglecting the children, mother and the children were living in unsanitary conditions, and the children were losing weight. When the social worker explained the Department had visited mother and had not seen

evidence supporting his claims, he responded in a way that indicated he believed there was a conspiracy to protect mother. When the social worker told father in January 2013 that the Department could not provide him with information about mother's cousin's fingerprint results, he became highly agitated and cursed the social worker, verbally insulting her.

On March 22, 2013, the Department mailed to father a notice of hearing and the Department's report recommending the court terminate jurisdiction and grant custody of the children to mother and monitored visits for father. The recommendation did not specify the frequency of father's monitored visits. The notice indicated the social worker recommended "[a] change in orders, services, placement, custody or status (*specify*): Termination of Jurisdiction."

Mother and the children were present at the March 26, 2013 hearing, but father did not attend. His attorney was present and did not request a continuance. The court called the matter and stated: "The recommendation is to terminate jurisdiction with a family law order." The court asked if anyone wished to be heard, and father's counsel stated: "My client objects. I haven't heard from him, but it appears from the documents my client objects." The court then asked mother's counsel to submit a family law order by Friday, giving legal and physical custody of the children to mother, with monitored visits of two hours per month for father. Father's counsel responded, "Two hours?" but did not make any objection.

On March 29, 2013, the court received the order. Father's counsel objected without specifying a basis for the objection, stating: "I have not heard from my client. I would on the record go ahead and object, but I do -- I have reviewed the family law order, and it does comport with the judge's orders and what the record reflects. We do object to the fact of the family law order." The court terminated jurisdiction and issued exit orders granting mother physical custody of the children and ordering two hours of supervised visitation per month for father.

## DISCUSSION

We review a dependency court's decision to terminate jurisdiction and issue custody and visitation orders under section 362.4 for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) When a determination is "committed to the sound discretion of the juvenile court, . . . the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established. [Citations.] As one court has stated, when a court has made a custody determination in a dependency proceeding, '"a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]."' [Citations.] And we have recently warned: 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Where substantial evidence supports the order, there is no abuse of discretion. (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.) "It is not our function to weigh the credibility of the witnesses or resolve conflicts in the evidence. [Citation.] Rather we must indulge in all reasonable inferences to support the findings of the juvenile court and must review the record in the light most favorable to the juvenile court's orders." (*Ibid.*)

Section 362.4 provides in pertinent part: "When the juvenile court terminates its jurisdiction over a . . . dependent child[,] and . . . an order has been entered with regard to the custody of that minor, the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child. [¶] Any order issued pursuant to this section shall continue until modified or terminated by a subsequent order of the superior court. The order of the juvenile court shall be filed in [the family's proceeding in family court] at the time the juvenile court terminates its jurisdiction over the minor, and shall become a part thereof."

## Father Forfeited Claim of Error By Failing to Make a Specific Objection about Lack of Notice

Father does not contend the court's decision to permit monitored visitation for two hours per month is not supported by the evidence. His sole contention is that he did not receive notice the court might reduce his visitation.

A claim of error is forfeited on appeal if it is not raised in the trial court. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Ibid*.) A claim of error is also forfeited if the objection raised is not specific enough to give the lower court an opportunity to correct the error. (*In re E.A.* (2012) 209 Cal.App.4th 787.) "General objections are insufficient to preserve issues for review. [Citation.] The objection must state the ground or grounds upon which the objection is based. [Citation.]." (*Id*. at p. 790.) The rationale behind the forfeiture rule is that it would be "inappropriate to allow a party not to object to an error of which the party is or should be aware[.]" (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 501.) The reviewing court retains discretion to consider questions of constitutional import, even where the parties have forfeited their right to raise the issue on appeal. (*In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1323 (*In re Spencer S*.).)

Father's counsel never specified a basis for father's objection and did not object to the adequacy of the notice mailed to father. At the March 26, 2013 hearing, counsel simply stated: "My client objects. I haven't heard from him, but it appears from the documents my client objects." At the March 29, 2013 hearing, counsel conceded the exit order comported with the judge's orders and the record, and simply stated: "I would on the record go ahead and object." Again, counsel offered no basis for the objection. Such attempts to preserve unidentified issues for appellate review are inadequate. In *In re E.A.*, *supra*, 209 Cal.App.4th 787, the father's counsel objected to all of the orders announced by the court, including that visitation would take place after the father was released from incarceration. The objection was inadequate to preserve a question of error

8

on appeal because counsel did not specify the court had failed to make a finding of detriment before denying visitation. Had counsel done so, the court could have made the requisite findings and avoided the need for the appeal. "Thus, counsel is asking us to reverse a perfectly sound decision over an alleged defect that could have been easily cured, if raised in a timely fashion." (*Id*. at p. 791.) Here too, had counsel objected that father had not received notice that visitation would be reduced, the court could have either continued the hearing and ordered such notice or ordered continued visitation consistent with its earlier orders. The lack of a specific basis for counsel's objection prevented the court from taking corrective action.

Father contends the court retains discretion to consider whether he was given adequate notice because the issue is of constitutional dimension and of great public interest. (*In re Spencer S., supra,* 176 Cal.App.4th at p. 1323.) We do not find a violation of constitutional dimension, and decline to further address the merits of the contention.

## Any Error in the Addendum to the Exit Order is Not Prejudicial

Father additionally asks this court to remand the case with directions to modify or strike a one-page addendum to the exit order. The addendum is a preprinted form entitled, "Reasons for No or Supervised Visitation." It states father "has not made substantial progress regarding the following court-ordered programs:" The boxes for "domestic violence," "parenting classes," and "other:" are checked, and after "other:" the text reads: "Father is to have a mental health evaluation and participate in individual counseling." Father contends the court was misinformed regarding material facts and therefore failed to exercise its discretion when it adopted the exit order. Father completed a parenting class in July 2012 and underwent a mental health evaluation on October 30, 2012. Father acknowledges the court ordered him to participate in family preservation services, but he argues the court never specified *which* programs or services he was required to participate in. Father contends as a result of the court's failure to

9

specify what services were required, there is no substantial evidence the court ordered him to participate in domestic violence counseling, individual counseling, or a mental health assessment as stated in the addendum. He further contends that he is prejudiced by the court's error because he will not be able to obtain unmonitored visitation with the children unless he completes the programs listed in the addendum.

We find substantial evidence in the record to support the addendum. On September 25, 2012, the court ordered father to comply with family preservation services, but father opted out of such services on October 1, 2012, telling the social worker that he saw no reason to continue such services, since he was not going to be seeing his children until they are returned to his full custody. On October 11, 2012, the court ordered father to have a mental health evaluation and ordered the Department to provide referrals to individual and domestic violence counseling. Father did have a mental health evaluation on October 30, 2012, but that evaluation resulted in a recommendation that father undergo additional evaluations under Evidence Code section 730 and to determine whether he needed psychiatric medications. The evaluator also recommended individual therapy, anger management classes, and parenting classes.

Other than the fact that he submitted to the October 30, 2012 mental health evaluation, there is no evidence in the record father availed himself of any of the recommended services or referrals after renouncing the need for any such services on October 1, 2012. The lack of a formal and specific court order directing father to participate in such services does not establish the court improperly considered father's lack of substantial progress in such services as a factor in its visitation order. The Department points out the purpose of the addendum is for the court to convey its concerns to the family law court and explain the reasons behind its order for supervised visitation. Although it might have been more accurate for the dependency court to explain the basis for its decision in more detail, to convey the fact that the further evaluations, counseling, and classes were *recommended*, rather than *court-ordered*, we do not believe the oversight constitutes an abuse of discretion.

Even if we were to find an abuse of discretion, father has not shown prejudice. Father claims prejudice based on the fact that he will probably not be able to obtain unmonitored visitation with the children unless he completes the programs listed in the addendum. However, father does not contend the court's order for monitored visitation lacks support in the record. Father exhibited emotional instability and has a history of unpredictable behavior that warrants monitored visitation until he can demonstrate that his circumstances have changed. It is reasonable to infer that mental health evaluations, counseling, and domestic violence and parenting classes are necessary to warrant any change to the visitation order. If father can demonstrate that his circumstances have changed, the family court has discretion to modify the visitation order. (§302, subd. (d).)

**DISPOSITION**

The order is affirmed.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

MINK, J.*

---

* Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.