Filed 3/17/26  P. v. Moreno CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B343949 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. TA106612 |
| v. | |
| EDWARD MORENO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Lonergan, Judge.  Affirmed.

Bess Stiffelman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Deepti Vaadyala, Deputy Attorneys General, for Plaintiff and Respondent.

─────────────

Appellant Edward Moreno raises the issue that a different panel of this division addressed in *People v. Thompson* (2025) 112 Cal.App.5th 1058, review granted September 24, 2025, S292540 (*Thompson*). Does Penal Code section 1170, subdivision (d)(1)[1] violate equal protection by excluding a juvenile homicide offender sentenced to 50 years to life from eligibility for relief? While we await guidance from the Supreme Court on this question, consistent with *Thompson*, we conclude that section 1170, subdivision (d)(1) does not violate equal protection by excluding a juvenile homicide offender like Moreno who was sentenced to 50 years to life.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2009, Moreno shot and killed Donnell Tedford. Moreno was 17 years old. On March 16, 2010, a jury convicted Moreno of first degree murder of Tedford (§ 187, subd. (a); count 1). It found true the gang allegation (§ 186.22, subd. (b)) and the allegation for personal discharge of a firearm causing death or great bodily injury (§ 12022.53, subd. (d)). On April 29, 2010, the trial court imposed 50 years to life, calculated as 25 years to life for the murder and an additional 25 years to life for the firearm enhancement.

On August 11, 2011, the Court of Appeal affirmed the conviction.[2]

On July 17, 2024, Moreno filed a petition for resentencing under section 1170, subdivision (d)(1). The District Attorney filed

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    *People v. Moreno* (Aug. 11, 2011, B224356) [nonpub. opn.].

2

an opposition.  The superior court denied the petition after conducting a hearing on February 7, 2025.

## DISCUSSION

Moreno argues that excluding a juvenile offender sentenced to 50 years to life for eligibility for relief under section 1170, subdivision (d)(1) violates equal protection of the laws.  Moreno reasons that he is entitled to relief under equal protection principles as stated in *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*), *People v. Sorto* (2024) 104 Cal.App.5th 435 (*Sorto*), and *People v. Bagsby* (2024) 106 Cal.App.5th 1040 (*Bagsby*), because a 50-year-to-life sentence is the functional equivalent of life without the possibility of parole (LWOP) and no rational basis exists for excluding him.

The Attorney General agrees.  Although the Attorney General's concession is entitled to deference, we are not bound to accept a concession by a party "establishing the law applicable to a case." (*Desny v. Wilder* (1956) 46 Cal.2d 715, 729; *People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1021.)  The interpretation of a challenged statute is a question of law that we must independently determine. (*Thompson*, *supra*, 112 Cal.App.5th at p. 1063, review granted.)

## I.     Functional equivalence of LWOP

The Legislature enacted Senate Bill No. 9 (2011–2012 Reg. Sess.) which amended section 1170 to provide resentencing for juvenile offenders who were sentenced to LWOP.  Section 1170, subdivision (d)(1)(A) (§ 1170, former subd. (d)(2)(A)(i))[3] provides,

---

[3]     In 2021, section 1170, subdivision (d)(2) was renumbered as subdivision (d)(1).  (Stats. 2021, ch. 731, § 1.3.)

"When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."

*Heard* held that principles of equal protection require extending relief under section 1170, subdivision (d) to juvenile offenders who were sentenced to the functional equivalent of LWOP. (*Heard, supra*, 83 Cal.App.5th at p. 632.) The court in *Heard* could "conceive of no legitimate reason" for providing eligibility for relief to juvenile offenders sentenced explicitly to LWOP but not those sentenced to its functional equivalent. (*Ibid*.) Another panel of this division, in *Sorto*, confirmed the equal protection analysis in *Heard*, concluding that no rational basis existed for section 1170, subdivision (d) to exclude juvenile offenders sentenced to the functional equivalent of LWOP from eligibility for relief. (*Sorto, supra*, 104 Cal.App.5th at p. 454.) In *Bagsby*, the Fourth District determined that there was no compelling reason to depart from *Heard's* analysis on functional equivalence and its conclusion that no rational basis existed for section 1170, subdivision (d) to differentiate between those sentenced to LWOP and de facto LWOP. (*Bagsby, supra*, 106 Cal.App.5th at p. 1059.)

*Heard*, *Sorto*, and *Bagsby* each involved a term-of-years sentence with a parole eligibility date that was unquestionably beyond the juvenile offender's natural life expectancy. (*Heard, supra*, 83 Cal.App.5th at p. 614 [sentence of 23 years plus 80 years to life]; *Sorto, supra*, 104 Cal.App.5th at p. 440 [sentence of 10 years plus 130 years to life]; *Bagsby, supra*, 106 Cal.App.5th

4

at p. 1047 [sentence of 107 years to life].)  They did not address how to assess functional equivalence when an offender's sentence could offer parole inside of his or her natural life.

In addressing an equal protection challenge to section 1170, subdivision (d)(1), a split panel of our colleagues in Division Seven of this district in *People v. Munoz* (2025) 110 Cal.App.5th 499, 507, 512, review granted June 25, 2025, S290828 (*Munoz*), concluded that 50 years to life for a juvenile homicide offender was not the functional equivalent of LWOP.[4]  The majority reasoned that unlike sentences with parole eligibility after more than 100 years of incarceration, a sentence of 50 years to life would provide a realistic opportunity to obtain release during the offender's expected lifetime.

In reaching its conclusion, the *Munoz* majority determined that the functional equivalency formulation by the Supreme Court in *People v. Contreras* (2018) 4 Cal.5th 349 (*Contreras*), did not apply to the equal protection challenge to section 1170, subdivision (d)(1).  (*Munoz, supra*, 110 Cal.App.5th at p. 511, review granted.)  *Contreras* considered the legality of juvenile punishment under the Eighth Amendment for nonhomicide offenses.  The trial court sentenced Contreras and his juvenile companion to 58 years to life and 50 years to life, respectively, under the One Strike Sex law.  (*Contreras*, at p. 358.)  Both were under 18 at the time of the offenses.  Because they were

---

[4]  In *Munoz*, the defendant "[did] not argue that, even if his sentence is not the functional equivalent of life without the possibility of parole, denying defendants like him sentenced to 50 years to life the right to petition under section 1170, subdivision (d)(1), violates equal protection."  (*Munoz, supra*, 110 Cal.App.5th at p. 512, review granted.)

sentenced under the One Strike Sex law, they were ineligible for youth offender parole under section 3051, subdivision (h). (*Contreras*, at p. 359.)

The Court held that a 50-year-to-life sentence for a juvenile nonhomicide offender violated the Eighth Amendment because it was the "functional[ ] equivalent" of LWOP and did not provide " ' "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." ' [Citation.]" (*Contreras*, *supra*, 4 Cal.5th at pp. 367, 371 [following the parameters of a constitutionally lawful sentence under *Graham v. Florida* (2010) 560 U.S. 48, 75 (*Graham*)].) The Court sought to address the term-of-years sentence that did "not clearly exceed[ ] a juvenile offender's natural lifespan," but "impinge[d] on the same substantive concerns that make the imposition of LWOP on juvenile nonhomicide offenders impermissible under the Eighth Amendment." (*Contreras*, at p. 364.)

The *Munoz* majority distinguished *Contreras* on two grounds. First*, Contreras* reached its functional equivalence conclusion for sentences that violated the Eighth Amendment, not equal protection principles. Second, the offenders in *Contreras* committed sex offenses, not murder. (*Munoz*, *supra*, 110 Cal.App.5th at pp. 510–511, review granted.)

A month after *Munoz* was filed, our colleagues in Division Five of this district in *People v. Cabrera* (2025) 111 Cal.App.5th 650, 653, addressed an equal protection challenge to section 1170, subdivision (d) based on *Heard*. *Cabrera* applied the Eighth Amendment formulation of functional equivalency in *Contreras* to conclude that 50 years to life was the functional equivalent of LWOP and a denial of eligibility for relief under section 1170, subdivision (d) violated equal protection. (*Cabrera,* at p. 653.)

6

In *Thompson*, *supra*, 112 Cal.App.5th at page 1081, review granted, a different panel of this division concluded that excluding a juvenile homicide offender with a sentence of 50 years to life  from section 1170, subdivision (d) relief did not violate equal protection.  Agreeing with *Munoz*, *Thompson* determined that the Eighth Amendment functional equivalency analysis in *Contreras* was distinct from an equal protection analysis of section 1170, subdivision (d).  (*Thompson,* at pp. 1072–1073, review granted; *Munoz, supra*, 110 Cal.App.5th at p. 511, review granted.)  "Eighth Amendment concerns do not *necessarily* establish an equal protection violation, and an equal protection specific analysis is therefore necessary."  (*Thompson*, at p. 1073.)  *Thompson* observed, "[n]either *Heard*, nor this court in *Sorto*, applied the reasoning of *Contreras* to the equal protection challenges presented in those cases."  (*Id.* at p. 1072.)

The Eighth Amendment analysis focuses on the proportionality of sentencing in determining whether a punishment is cruel and unusual.  (*People v. Williams* (2024) 17 Cal.5th 99, 131 (*Williams*).)  This analysis " 'requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question.' (*Graham, supra*, 560 U.S. at p. 67.)" (*Thompson, supra*, 112 Cal.App.5th at p. 1073, review granted.)

*Thompson* rejected the argument that *Contreras* "created a single 'functional equivalent' classification that transfers into the equal protection context."  (*Thompson, supra*, 112 Cal.App.5th at p. 1074, review granted.)  As recognized in *Thompson*, "[i]nstead of asking whether a 50-years-to-life term functions like [LWOP] with respect to Eighth Amendment concerns that constrain lawful punishment for juvenile homicide offenders, we must ask

7

whether ' "a statutory distinction [between life without parole and a 50-years-to-life term] is so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection." [Citation.]' [Citations.]" (*Ibid*.)

We are not persuaded by Moreno's argument that the Eighth Amendment concerns in *Contreras* are "inextricably linked" to the Legislature's objectives behind enacting section 1170, subdivision (d)(1). He reasons that both sought to address "a juvenile offender's ability to have a meaningful opportunity for release as discussed in [*Graham*]." *Thompson* acknowledged that the legislative history of Senate Bill No. 9 mentioned "general considerations" of *Graham* and disproportionate sentences imposed on juvenile offenders. (*Thompson*, *supra*, 112 Cal.App.5th at p. 1075, review granted.) But the history shows that the Legislature was "expressly concerned about juveniles being sentenced to die in prison." (*Ibid*.) The Legislature sought to specifically "provide an opportunity for juvenile offenders whose sentences ensured they would die in prison," rather than those who were excessively punished without considering "their capacity for change." (*Id*. at p. 1076.)

Consistent with *Thompson* and *Munoz*,[5] we dismiss Moreno's reliance on *Contreras* because it addressed functional equivalence in an Eighth Amendment challenge.[6] (*Thompson*,

---

[5] Following *Thompson*, *People v. Baldwin* (2025) 113 Cal.App.5th 978, 984–985, 1000–1001 (*Baldwin*), also distinguished the analysis for an equal protection challenge to section 1170, subdivision (d) from the Eighth Amendment functional equivalency analysis.

[6] "Absent a compelling reason, the Courts of Appeal are normally loath to overrule prior decisions from another panel of

8

*supra*, 112 Cal.App.5th at p. 1074, review granted; *Munoz, supra*, 110 Cal.App.5th at p. 511, review granted; *Baldwin, supra*, 113 Cal.App.5th at p. 999.)  "Rather than analyzing a sentence's functional equivalence to LWOP around the demands of the Eighth Amendment as considered in *Contreras,* evaluating section 1170[, subdivision] (d)] . . . in an equal protection context requires 'an equal protection specific analysis' (*Thompson*, [at p. 1073]) . . . ." (*Baldwin*, at p. 1000.)

## II. Rational basis for excluding offenders sentenced to 50 years to life

After *Heard*, the Supreme Court streamlined the equal protection analysis by no longer inquiring into whether the identifiable groups treated differently by the challenged law are similarly situated.  (*People v. Hardin* (2024) 15 Cal.5th 834, 850 (*Hardin*).)  The challenger of the law must show that "the challenged difference in treatment is adequately justified under the applicable standard of review."  (*Id*. at pp. 850–851.)  When the law does not involve a suspect classification or a fundamental right, "[w]e must uphold the Legislature's classification against an equal protection challenge unless 'it fairly can be said that there is no "reasonably conceivable state of facts that could provide a rational basis for the classification." ' [Citation.]" (*Williams, supra*, 17 Cal.5th at p. 130.)  "The underlying rationale for a statutory classification need not have been 'ever

---

the same undivided district or from the same division." (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9; *Bagsby, supra*, 106 Cal.App.5th at p. 1056.)  As mentioned, *Thompson* was filed by a different panel of this division.

actually articulated' by lawmakers, nor 'be empirically substantiated.' [Citation.]" (*Hardin*, at p. 852.)

Moreno argues that no rational basis exists for permitting relief to offenders sentenced to LWOP and excluding those who were sentenced for less severe crimes. He relies on the equal protection analysis in *Hardin*, *supra*, 15 Cal.5th at page 839, which rejected a challenge that the Legislature had no rational basis for excluding young adults who were sentenced to LWOP from youth offender parole eligibility. Moreno points out that *Sorto* and *Heard* involved the opposite situation when explicit LWOP offenders are eligible for relief under section 1170, subdivision (d)(1) but functionally equivalent LWOP offenders are not. (*Sorto*, *supra*, 104 Cal.App.5th at p. 446; *Heard*, *supra*, 83 Cal.App.5th at p. 631.)

*Thompson* disagreed, citing *In re Spencer S.* (2009) 176 Cal.App.4th 1315, as an example when the Legislature extended relief to more serious offenders while excluding less serious offenders. (*Thompson*, *supra*, 112 Cal.App.5th at p. 1079, review granted.) Welfare and Institutions Code section 790 provided deferred entry of judgment for first-time juvenile felony offenders but denied the same relief to first-time juvenile misdemeanor offenders. (*In re Spencer S.*, at p. 1324.) The reviewing court determined that the law rationally provided relief to the first-time felony offenders who were "most at risk of being swept up into" an expected increase in crime by juveniles and "who retained the potential to be reformed." (*Id.* at pp. 1327–1328.)

As mentioned earlier, the legislative history reflects the Legislature's concern with punishment of juvenile offenders that guaranteed death in prison, not merely any excessive punishment. (*Thompson*, *supra*, 112 Cal.App.5th at p. 1076,

10

review granted.)  The Legislature's goal in enacting section 1170, subdivision (d) was to provide an avenue to relief "for juvenile offenders whose sentences ensured they would die in prison." (*Thompson,* at p. 1076.)  *Thompson* observed that the Legislature could have rationally restricted relief to offenders sentenced to LWOP, "despite the possibility that they committed crimes more egregious than juvenile offenders serving lesser sentences, such as 50 years to life."  (*Id*. at p. 1080.)

According to *Thompson*, the legislative history also indicates a desire to "incrementally [address] the larger problem of excessive punishment of juvenile offenders."  (*Thompson*, *supra*, 112 Cal.App.5th at p. 1076, review granted.)  The Legislature could have rationally determined that "the most pressing priority" was to first provide relief for those juvenile offenders whose sentences guaranteed that they would die in prison.  (*Id*. at p. 1077.)  " '[T]he Legislature has "broad discretion" to proceed in an incremental and uneven manner without necessarily engaging in arbitrary and unlawful discrimination.' [Citation.]"  (*Williams*, *supra*, 17 Cal.5th at p. 125.)  We adopt *Thompson's* determination that the Legislature could have rationally distinguished juvenile offenders sentenced to LWOP from those with sentences of 50 years to life because only those sentenced to LWOP had a "100 percent chance of dying in prison." (*Thompson*, at p. 1078.)

As in *Thompson*, we conclude that Moreno fails to show that the LWOP limitation on eligibility for relief under section 1170, subdivision (d)(1) has no rational basis as applied to juvenile homicide offenders sentenced to 50 years to life. (*Thompson*, *supra*, 112 Cal.App.5th at p. 1081, review granted;

11

see *Baldwin*, *supra*, 113 Cal.App.5th at p. 1006 [as applied to juvenile nonhomicide offenders sentenced to 44 years to life].)

## DISPOSITION

We affirm the order denying Moreno's petition for recall of sentence.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.

We concur:

EGERTON, Acting P. J.

ADAMS, J.