Filed 8/31/20  In re J.C. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | H047569 (Monterey County Super. Ct. Nos. 19JV000824, 19JV000832) |
| THE PEOPLE, Plaintiff and Respondent, v. J.C., Defendant and Appellant. | |

Pursuant to a plea agreement, the juvenile court sustained seven charges and found jurisdiction over the minor, J.C.  Five of the charges were so-called "wobblers," alleged as felonies, and two were misdemeanors.[1]  The juvenile court declared J.C. a ward of the court, confined him in juvenile hall, and ordered probation supervision with multiple conditions.  The conditions included a directive on the length of J.C.'s hair and

---

[1] A wobbler is an offense that is "chargeable or, in the discretion of the court, punishable as either a felony or a misdemeanor."  (*People v. Park* (2013) 56 Cal.4th 782, 789.)

restrictions on his freedom to visit locations with known gang-related activity, associate with known gang members, probationers, or parolees, and change his residence or leave the state without permission.

On appeal, J.C. contends the juvenile court erred by failing to consider whether it should exercise discretion to sustain the wobblers as misdemeanors rather than felonies. In addition, he claims that the juvenile court erred by imposing probation conditions that were unreasonable or unconstitutionally vague or overbroad.

For reasons that we will explain, we reverse the dispositional order and remand the matter for the juvenile court to declare whether J.C.'s wobbler offenses are felonies or misdemeanors and strike the probation condition dictating J.C.'s hair length.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Procedural History*

On September 16, 2019,[2] the Monterey County District Attorney filed a wardship petition under Welfare and Institutions Code section 602, subdivision (a), alleging that J.C. took a vehicle without the owner's consent and with the intent to permanently or temporarily deprive the owner of title and possession (Veh. Code, § 10851, subd (a); count 1 [felony]), bought, received, concealed, sold or withheld stolen property (Pen. Code, § 496d, subd. (a)[3]; count 2 [felony]), resisted, delayed or obstructed an officer (§ 148, subd. (a)(1); count 3 [misdemeanor]), and committed trespass by entering and occupying real property and a structure (§ 602, subd. (m); count 4 [misdemeanor]). (Case No. 19JV000824.)

On September 17, the district attorney filed another wardship petition alleging that J.C. committed assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); counts 1 & 2 [felonies]), evaded, fled or otherwise attempted to elude a pursuing peace officer while driving with willful wanton disregard for safety (Veh. Code,

---

[2] Unless otherwise indicated all dates occurred in 2019.

[3] Unspecified statutory references are to the Penal Code.

§ 2800.2, subd. (a); count 3 [felony]), took a vehicle without the owner's consent and with the intent to permanently or temporarily deprive the owner of title and possession (Veh. Code, § 10851, subd (a); count 4 [felony]), bought, received, concealed, sold or withheld stolen property (§ 496d, subd. (a); count 5 [felony]), and injured, caused or permitted a child to suffer injury under circumstances likely to produce great bodily harm or death while having the care and custody of the child (§ 273a, subd. (a); count 6 [felony]). (Case No. 19JV000832.)

At an uncontested joint jurisdictional hearing on October 7, the juvenile court, pursuant to a negotiated resolution, dismissed count 2 in case number 19JV000824, and counts 5 and 6 in case number 19JV000832. J.C. admitted the remaining seven counts alleged in the petitions. Mirroring the petitions, the juvenile court indicated on the record and in its minute order that count 3 (resisting an officer) and count 4 (trespass) in case number 19JV000824, were misdemeanors, and the other admitted counts were felonies.[4] Further, in the written jurisdictional order, a box is checked next to the following preprinted statement: "The court has considered whether the above offense(s) should be felonies or misdemeanors." The juvenile court, however, did not mention on the record at the jurisdictional hearing that it considered the wobbler designation issue.

At a dispositional hearing on October 22, the juvenile court declared J.C. a ward of the court, committed him to juvenile hall for 403 days (with 38 days of credit for time served), and ordered wardship and probation supervision with conditions until January, 2027 (when J.C. turns 23 years old). In the written dispositional order, a box is checked next to a preprinted finding regarding the admitted charges that states, "The court previously sustained the following counts. Any charges which may be considered a

---

[4] The five admitted felony counts were: count 1 (vehicle theft), in case number 19JV000824; and count 1 (assault likely to produce great bodily injury), count 2 (assault likely to produce great bodily injury), count 3 (evading an officer), and count 4 (vehicle theft), in case number 19JV000832.

3

misdemeanor or a felony for which [the] court has not previously specified the level of offense are now determined to be as follows." Below that statement, there is a list of the seven admitted counts indicating, in accord with the previous designations, that counts 3 and 4 in case number 19JV000824 are misdemeanors and the five other counts are felonies. The juvenile court, however, did not mention this determination of the offense status on the record at the dispositional hearing.

B. *Factual Background*[5]

On August 13, a security guard saw J.C. drinking beer and smoking marijuana in a laundry room at an apartment complex. The guard warned J.C. to stay away from the complex or he would be arrested for trespass. The next day, the same guard saw J.C. urinating from a window of the laundry room and detained him. Police cited J.C., transported him home, and released him to his mother.

On August 26, a police officer saw a parked car that he recognized as stolen. As the officer got out of his car, the driver of the stolen vehicle got out as well. The officer directed the driver to get back in the vehicle, instead he fled. A female passenger in the vehicle identified the driver as J.C. Police later found J.C. walking in the area and directed him to stop, but he again fled. After catching up to J.C., police cited him and released him to his mother.

On September 15, police attempted to stop a vehicle believed to be stolen. The vehicle accelerated and drove away. As police pursued, the vehicle drove past a sign in the center of the roadway indicating there was a road closure ahead because of a festival. The vehicle "rammed and broke through the barriers" outside the crowded festival, and "multiple civilians began diving out of the way to avoid being hit." The vehicle swerved, hit a stroller carrying a 2-year-old child, and struck a 6-year-old boy. J.C. got out of the

---

[5] We take these facts from the probation officer's report relating to both cases.

car and fled. Bystanders chased and detained him. Police arrested J.C. and found "two shaved keys" when searching him.

J.C.'s mother told the probation officer that J.C. began running away regularly in the summer of 2019, and "would be gone for two or three days." J.C.'s mother and father looked for him when he ran away, and his mother had called J.C.'s girlfriend and other friends but they did not respond to her calls. She said J.C. had three adult friends who she and J.C.'s father tried to prevent from spending time with J.C. J.C. again ran away from home on September 14—the day before he committed the offenses at the festival.

J.C. admitted truancy and staying in the homes of his adult friends when he had run away. He said he "runs away from home to 'go party and look for cars.' " J.C. also admitted to "associating with Sureño gang members for about one or two years."

## II. DISCUSSION

J.C. raises two claims on appeal. He contends the juvenile court erred by failing to consider whether it should exercise discretion to sustain the wobblers as misdemeanors rather than felonies. In addition, he claims that the juvenile court erred by imposing certain probation conditions that were unreasonable or unconstitutionally vague or overbroad. We address J.C.'s claims in turn.

A. *Wobbler Offenses*

J.C. admitted five wobbler offenses that were charged as felonies. (See § 245, subd. (a)(4) [counts 1 & 2 (case No. 19JV000832)]; Veh. Code, § 10851, subd. (a) [count 1 (case No. 19JV000824); count 4 (case No. 19JV000832)]; Veh. Code, § 2800.2, subd. (a) [count 3 (case No. 19JV000832)]).

Welfare and Institutions Code section 702 states in relevant part: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." The California Supreme Court has explained that, under this provision, the juvenile court is required to make an "explicit declaration" whether a

5

wobbler offense is a felony or a misdemeanor. (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1204, 1207 (*Manzy W.*); see also Cal. Rules of Court, rules 5.780(e)(5), 5.795(a).) "This declaration must be made at or before disposition." (*In re G.C.* (2020) 8 Cal.5th 1119, 1125 (*G.C.*).) Moreover, the requirement applies even when a minor admits the offense because the "minor's admission of a wobbler offense charged as a felony is not an 'adjudication' of the misdemeanor or felony status of that offense." (*In re Nancy C.* (2005) 133 Cal.App.4th 508, 512.)

The purpose of the statutory requirement is "twofold:" "it helps determine the length of any present or future confinement for a wobbler offense" and " it 'ensur[es] that the juvenile court is aware of, and actually exercises, its discretion under . . . [Welfare and Institutions Code] section 702.' " (*G.C.*, *supra*, 8 Cal.5th at p. 1125.) "It is not sufficient that the offenses were identified as felonies in the wardship petitions and in the minute order of the jurisdictional hearing, or that they were treated as felonies for purposes of calculating the maximum term of confinement." (*Ibid.*) "If the court did not make the required express determination, but the record shows it was aware of—and, in fact, exercised—its discretion, the matter need not be remanded. [Citation.] However, if the record does not show such an exercise of discretion, the matter must be remanded." (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 92.)

J.C. and the Attorney General agree that the juvenile court did not acknowledge its discretion to declare the five wobbler offenses misdemeanors or state any reasons for declaring the offenses to be felonies. Neither the parties nor the juvenile court mentioned at either the jurisdictional hearing or the dispositional hearing that the five offenses were wobblers that needed to be designated.[6]

---

[6] J.C. argues that, despite his failure to object, his claim of error "may be raised for the first time on appeal because the error is tantamount to an unauthorized sentence," citing *In re Ramon M.* (2009) 178 Cal.App.4th 665, 675. After J.C. filed his opening brief, the California Supreme Court decided *G.C.* Therein, the court disapproved of *In re*

We agree with the parties that the record here does not demonstrate the juvenile court was aware of and exercised its discretion to declare whether J.C.'s offenses would be treated as felonies or misdemeanors. None of the juvenile court's statements during the jurisdictional and dispositional hearings indicate that it considered the treatment of the offenses, and the juvenile court did not expressly declare its determination in this regard. (See *Manzy W.*, *supra*, 14 Cal.4th at p. 1209.) Given the lack of indication that the juvenile court was aware of and, in fact, exercised its discretion, the preprinted statements in the written orders of the jurisdictional and dispositional hearings that mention the consideration and determination of the levels of the offenses do not satisfy the requirement of Welfare and Institutions Code section 702. (See *In re Ricky H.* (1981) 30 Cal.3d 176, 191; *Manzy W.*, *supra*, 14 Cal.4th at pp. 1207–1209.)

Accordingly, we will remand the matters to the juvenile court so that it may exercise its discretion and declare whether J.C.'s offenses of vehicle theft (count 1 [case No. 19JV000824]), assault likely to produce great bodily injury (counts 1 & 2 [case No. 19JV000832]), evading an officer (count 3 [case No. 19JV000832], and vehicle theft (count 4 [case No. 19JV000832]) are felonies or misdemeanors.

B. *Probation Conditions*

1. Background

The probation officer's report to the juvenile court recommended the imposition of 42 probation conditions at the dispositional hearing: 13 "standard terms and conditions" (numbered 1-13; "standard conditions"), 6 "gang terms and conditions" (numbered 14-

*Ramon M.* on the question of whether a dispositional order that fails to state whether the offense is a felony or a misdemeanor amounts to an unauthorized sentence. (*G.C.*, *supra*, 8 Cal.5th at pp. 1132–1133.) The Attorney General cites *G.C.* in his brief but does not assert forfeiture. Instead, he "agree[s] with [J.C.] that this matter must be remanded so that the juvenile court can explicitly exercise its discretion to designate [J.C.'s] wobbler offenses as felonies or misdemeanors." Because the Attorney General does not argue forfeiture, we will assume arguendo that forfeiture is inapplicable here and address the merits of J.C.'s claim.

19; "gang conditions"), and 23 "special terms and conditions" (numbered 20-42). (Capitalization and bold omitted.)

Condition No. 8—one of the standard conditions—prohibits J.C. from changing his "place of residence from Monterey County or leav[ing] this state without permission of the Court or Probation Officer"; directs J.C. "to notify [his] Probation Officer of [his] new address" before any "change of residence"; further directs J.C. to "[r]eport each new address and phone number to [his] Probation Officer within 24 hours"; and clarifies that the condition does not "prohibit [J.C.'s] parents from changing their residence without prior approval of the Court or Probation Officer."[7]

Another standard condition—condition No. 10—directs J.C. "not to associate with any individuals known by [him] to be disapproved of by [his] parents or guardians," "not [to] knowingly associate/communicate with any individuals identified to [him] by [his] Probation Officer as a threat to [his] successful completion of probation," and "not to associate with any individuals known by [him] to be on Probation or Parole (adult or juvenile)."

Among the recommended gang conditions, condition No. 15 directs J.C. "not to associate with anyone known to [him] to be a member of any gang as directed by [his] Probation Officer." In addition, condition No. 17 prohibits J.C. from "visit[ing] or remain[ing] in any specific locations known by [him] to be identified as gang gathering areas, areas where gang members or associates are congregating or areas specified by [his] Probation Officer as involving gang related activity." Condition No. 17 further directs J.C. not to "knowingly participate in any gang activity" and defines the term " 'gang' " as "a criminal street gang as defined by Penal Code Section 186.22,

---

[7] Relatedly, condition No. 30 mandates J.C. "reside only with [his] parents or approved guardian, unless specifically authorized to do so otherwise by [his] Probation Officer," until he "reach[es] the age of 18."

8

subdivision (f)." Condition No. 18 requires J.C. "to grow and keep the hair on [his] head (including sides and top) at least one inch in length."

At the dispositional hearing, J.C.'s defense counsel objected to the gang conditions as unreasonable under *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*). Defense counsel argued that none of J.C.'s offenses were "gang-related" and other proposed conditions provided the probation department "the tools to intercede in" J.C.'s admitted association with Sureño gang members. The juvenile court overruled the objection, noting that J.C. "had been associating with Sure[ñ]os for the past one or two years." The juvenile court explained that the gang terms were appropriate because they would "prevent future criminality," even though the court had "no reason to believe that the offense itself had any gang overtones." The juvenile court imposed all 42 conditions recommended by the probation department.

### 2. Legal Principles

By statute, probation conditions must be "reasonable." (§ 1203.1, subd. (j); Welf. & Inst. Code, § 730, subd. (b).) However, " '[a] condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.' " (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1118.) A reviewing court may not strike a probation condition as unreasonable unless it " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*Ricardo P.*, at p. 1118, quoting *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).) This three-part test— commonly referred to as the *Lent* test—applies to juvenile and adult probation cases. (*Ricardo P.*, at pp. 1118–1119.)

Recently in *Ricardo P.*, the California Supreme Court reviewed an electronics search condition imposed on a juvenile probationer who had admitted to participating in two felony burglaries where there was no evidence of the use of electronic devices.

9

(*Ricardo P.*, *supra*, 7 Cal.5th at p. 1115.) The court focused its analysis on the third prong of the *Lent* test—whether the condition was reasonably related to future criminality. (*Id*. at p. 1119.) The court explained that the third *Lent* prong "contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Id.* at p. 1122.) The court concluded that the electronics search condition imposed on the juvenile lacked the requisite proportionality because it was "far more burdensome and intrusive" than probation conditions it had previously found reasonable. (*Id.* at pp. 1124, 1126 [distinguishing the electronics search condition from a notification requirement in *People v. Olguin* (2008) 45 Cal.4th 375 (*Olguin*)].) The court reasoned that the "sweeping" (*Ricardo P.*, at p. 1122) electronics search condition imposed on the juvenile significantly burdened his "privacy interests" (*id*. at p. 1123) and thus "requires a correspondingly substantial and particularized justification." (*Id.* at p. 1126.) It stated "a juvenile court imposing such a condition must consider whether, in light of 'the facts and circumstances in each case' [citation], the burdens imposed by the condition are proportional to achieving some legitimate end of probation." (*Id.* at p. 1127.)

A failure to object in the trial court to a probation condition as unreasonable forfeits the right to challenge the condition on that ground on appeal. (*People v. Welch* (1993) 5 Cal.4th 228, 237; *In re Sheena K.* (2007) 40 Cal.4th 875, 881–882 (*Sheena K.*).) As an appellate court, we typically review a juvenile court's decision to impose conditions of probation for abuse of discretion. (*Olguin*, *supra*, 45 Cal.4th at p. 379; *Ricardo P.*, *supra*, 7 Cal.5th at p. 1118.) "That is, a reviewing court will disturb the trial court's decision to impose a particular condition of probation only if, under all the circumstances, that choice is arbitrary and capricious and is wholly unreasonable." (*People v. Moran* (2016) 1 Cal.5th 398, 403 (*Moran*); see also *Olguin*, at p. 384.)

In addition to the reasonableness standard, probation conditions are subject to constitutional boundaries. " 'The juvenile court has wide discretion to select appropriate

10

conditions,' but '[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.' " (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1118, quoting *Sheena K.*, *supra*, 40 Cal.4th at pp. 889, 890.) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153 (*E.O.*).)

Further, "[u]nder the void for vagueness doctrine, based on the due process concept of fair warning, an order ' "must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' [Citation.] The doctrine invalidates a condition of probation ' " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' [Citation.] By failing to clearly define the prohibited conduct, a vague condition of probation allows law enforcement and the courts to apply the restriction on an ' " 'ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " ' " (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*), quoting *Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

"Even absent an objection, a defendant may, on appeal, argue a condition is unconstitutional if the claim presents a ' " 'pure question[] of law that can be resolved without reference to the particular sentencing record developed in the trial court.' " ' "[8]

---

[8] Defense counsel objected to the gang conditions here on reasonableness grounds under *Ricardo P*. Acknowledging that defense counsel did not object on constitutional grounds, J.C. asserts that his current constitutional claims of overbreadth and vagueness are "facial challenges only and do not rely on the sentencing record." In light of J.C.'s assertion, we limit our review of J.C.'s constitutional claims to the purely legal inquiry of whether the challenged conditions are overbroad or vague on their face. (See *Sheena K.*, *supra*, 40 Cal.4th at pp. 885, fn. 5 & 888–889.)

11

(*Moran*, *supra*, 1 Cal.5th at p 403, fn. 5; see also *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) Whether a probation condition is unconstitutionally vague or overbroad is a question of law, which we review de novo. (*Sheena K.*, *supra*, 40 Cal.4th at p. 888; *Shaun R.*, at p. 1143.)

   3.  Analysis

  J.C. argues that condition Nos. 10, 15, and 17 are unconstitutionally vague and overbroad. J.C. contends further that condition No. 8 is unreasonable under *Lent* and unconstitutionally overbroad and vague. J.C. also asserts that condition No. 18, which restricts his head hair length, is unreasonable under *Lent*. Finally, J.C. claims that he received ineffective assistance of counsel when his defense counsel failed to object to condition No. 8 on the grounds raised in this appeal.[9] We begin by addressing J.C.'s *Lent* challenge to condition No. 18 and then turn to his arguments regarding the other conditions.

   a.  Condition No. 18 – Restriction on Hair Length

  Condition No. 18 directs J.C. to "to grow and keep the hair on [his] head (including sides and top) at least one inch in length."

  J.C. argues that this gang condition is unreasonable under *Lent*'s three-part test and should be stricken. The Attorney General concedes the first two prongs of the *Lent* test are satisfied here and acknowledges that the "record contains no explanation why [J.C.]'s hair length is reasonably related to future criminality." Nevertheless, and by

_____

  [9] J.C. also asserts ineffective assistance "for [his] constitutional claims if this Court determines that an objection should have been made below" and for his *Lent* challenge to condition No. 18 if this court finds that claim forfeited. Because we address the merits of J.C.'s facial overbreadth and vagueness claims, we need not address any issue of ineffective assistance of counsel for those claims. Further, we will not address any issue of ineffective assistance related to an "as applied" overbreadth or vagueness claim because we do not understand J.C. to make such argument. (See *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 (*Tobe*).) As for condition No. 18, the Attorney General does not assert forfeiture, and we need not address any issue of ineffective assistance because we address the merits of J.C.'s *Lent* challenge.

12

contrast to J.C.'s request that we strike the condition, the Attorney General asks us to instruct the juvenile court to either strike the condition or "provide a more concrete explanation for the reasonable relationship between the hair length condition and preventing future criminality."

We agree with the parties that, on this record, condition No. 18 does not satisfy *Lent.* Generally, restrictions on hair length implicate constitutionally protected rights. (See *McCrae v. California Unemployment Ins. Appeals Bd.* (1973) 30 Cal.App.3d 89, 94 [recognizing hair length as a "communicative symbol"]; see also *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 750, 772 [acknowledging a liberty interest in personal dress and appearance and concluding that "a person's choice of dress and manner of appearance" is "constitutionally entitled to some protection against arbitrary governmental suppression"].) In addition, the Attorney General does not cite any case that approves a probation condition like condition No. 18, and other jurisdictions have rejected probation conditions dictating hair length. (See, e.g., *Inman v. State* (1971) 124 Ga.App. 190, 193 [183 S.E.2d 413, 415–416] (condition requiring defendant to maintain a short haircut determined to be unreasonable because it "invade[d] a person's constitutionally protected right to personal self-expression" and did not relate to the defendant's rehabilitation]; *State v. King* (2003) Ohio 151 Ohio App.3d 346, 351 [784 N.E .2d 138, 142] [trial court abused its discretion by ordering defendant to "get 'a conventional haircut' " and "remain clean shaven to 'change how [defendant] views himself and change how others view [defendant]' " because the condition unnecessarily infringed upon defendant's liberty]).

Here, there is no information in the record supporting a relationship between J.C.'s hair length and his future criminality or demonstrating proportionality between the burden placed on J.C.'s freedom to control his hair length and a legitimate state interest. Given the absence of any rationale for it in the record, condition No. 18 cannot stand. (See *Ricardo P.*, *supra*, 7 Cal.5th at pp. 1122, 1128–1129.) As neither party has

13

proposed any modification of the condition for our consideration, we will direct the juvenile court on remand to strike this condition.  (See *People v. Petty* (2013) 213 Cal.App.4th 1410, 1421; *Lent*, *supra*, 15 Cal.3d at p. 486.)

> b.   Condition No. 17 – Restriction on Visiting Locations with Gang Activity

Condition No. 17 states that J.C. "shall not visit or remain in any specific locations known by [him] to be identified as gang gathering areas, areas where gang members or associates are congregating or areas specified by [his] Probation Officer as involving gang related activity, nor shall [he] knowingly participate in gang activity."

J.C. asserts that this condition is invalid because "the requirement that [he] stay away from areas involving 'gang related activity' is unconstitutionally vague" in that it fails to provide notice of the areas and activities he must avoid.  He further contends that this requirement is impermissibly overbroad because it burdens his "constitutional right to travel" to the extent that he has "legitimate business to conduct" or lives in areas designated by his probation officer as involving gang-related activity.  He also argues that the condition is overbroad to the extent it bans him from "areas involving gang-related activity of gangs with which he does not associate and may even ban him from living in his own neighborhood, or attending school or work, if his Probation Officer deems those to be prohibited areas."

In conducting our independent review of a condition challenged on vagueness grounds, we are "guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' "  (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  "[A] probation condition should not be invalidated as unconstitutionally vague ' " 'if any reasonable and practical construction can be given to its language.' " ' " (*People v. Hall* (2017) 2 Cal.5th 494, 501 (*Hall*).)

14

This court has previously upheld against vagueness challenges probation conditions that are essentially identical to condition No. 17.  In *People v. Barajas* (2011) 198 Cal.App.4th 748, a panel of this court approved the following condition:  " 'You're not to visit or remain in any specific location which you know to be or which the probation officer informs you to be an area of criminal street gang-related activity.' "  (*Id.* at pp. 754, 759–760.)  Similarly, in *People v. Leon* (2010) 181 Cal.App.4th 943 (*Leon*), another panel of this court modified a probation condition from " 'You're not to frequent any areas of gang-related activity' " to " 'You are not to visit or remain in any specific location which you know to be or which the probation officer informs you is an area of criminal-street-gang-related activity.' "  (*Id.* at p. 952; see also *In re H.C.* (2009) 175 Cal.App.4th 1067, 1072 (*H.C.*).)

Acknowledging *Barajas* and *Leon* in his reply brief, J.C. concedes that most of condition No. 17 is not unconstitutionally vague.  Nevertheless, he argues that one clause of the condition is still vague because it lacks a knowledge requirement, i.e., " 'areas where gang members or associates are congregating.' "  We are not persuaded by J.C.'s argument because this clause, in fact, has an attendant knowledge requirement.

Based on a reasonable and practical reading of condition No. 17, the knowledge requirement in the condition modifies all three subsequent clauses that describe the restricted gang-related areas.  Thus, the clause that J.C. singles out, when properly read in context, bars J.C. from "any specific locations known by [him] to be . . . areas where gang members of associates are congregating."  Further, "[r]evocation of probation typically requires proof that the probation violation was willful" (*Hall*, *supra*, 2 Cal.5th at p. 498), and "the vagueness doctrine demands ' "no more than a reasonable degree of certainty." ' " (*Id.* at p. 503.)  That level of certainty is present in condition No. 17 as currently formulated.  For these reasons, we reject J.C.'s vagueness claim and decline his suggestion to add a redundant knowledge requirement to condition No. 17.

15

Turning to J.C.'s overbreadth challenge, we look to "the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights." (*E.O.*, *supra*, 188 Cal.App.4th at p. 1153.) "Although criminal offenders placed on probation retain their constitutional right to travel, reasonable and incidental restrictions on their movement are permissible." (*Moran*, *supra*, 1 Cal.5th at p. 406.) "Imposing a limitation on probationers' movements as a condition of probation is common, as probation officers' awareness of probationers' whereabouts facilitates supervision and rehabilitation and helps ensure probationers are complying with the terms of their conditional release." (*Ibid.*) Moreover, "a facial overbreadth challenge is difficult to sustain" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 577) because it is "an assertion that the law is invalid in all respects and cannot have any valid application." (*Tobe*, *supra*, 9 Cal.4th at p. 1109.)

J.C. asserts that condition No. 17 is overbroad because it prevents him from entering prohibited areas for lawful purposes and areas in which gang-related activity involves gangs with whom he does not associate. J.C. requests that we remedy these alleged infirmities by remanding the case to allow the juvenile court to modify the condition to permit him to enter prohibited areas for lawful purposes (including school or work) and to clarify that the only relevant gang activity is that perpetrated by gangs with whom he has been associated. We are not persuaded that condition No. 17 is facially overbroad or in need of these modifications.

The Court of Appeal in *Victor L.*, *supra*, 182 Cal.App.4th 902, reviewed a probation condition that ordered the minor to stay away from " 'any areas where gang members are known by Minor to meet or get together, or areas known by Minor for gang-related activity' " and not to participate in any gang activity. (*Id.* at p. 913, fn. 7.) The court agreed with minor that this condition "is impermissibly vague in that it does not provide notice of what areas he may not frequent or what types of activities he must shun." (*Id.* at p. 914.) Accordingly, the court ordered the condition modified but only to

16

include the following italicized language: " 'The Minor shall not be in any areas where gang members are known by Minor to meet or get together, or areas known by Minor for gang-related activity (*or specified by his probation officer as involving gang-related activity*), nor *shall he* participate in any gang activity.' " (*Id*. at pp. 931–932.)

In reaching its conclusion, the court in *Victor L.* acknowledged that "if a minor lived within the area described by the gang-related boundaries, his banishment from it would be constitutionally suspect. [Citation.] If he worked or went to school in the district so defined, the condition would need to permit travel as necessary to attend to those aspects of his livelihood or education." (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 916–917, fn. omitted.) Nevertheless, the court in *Victor L.* concluded that its modification—which "allow[ed] specification of exact limits to be made by the probation officer on an individualized basis"—made "the condition of probation both clear enough to avoid a vagueness challenge and narrow enough to escape a claim of overbreadth." (*Id*. at p. 918.)

The modified probation condition in *Victor L.* is very similar to condition No. 17. (*Victor L.*, *supra*, 182 Cal.App.4th at pp. 931–932; see also *People v. Nice* (2016) 247 Cal.App.4th 928, 951–952.) Thus, we cannot say that condition No. 17, on its face, is invalid in all circumstances; therefore, we reject J.C.'s facial challenge to it.

c. Condition Nos. 10 and 15 – Restrictions on Association with Other Probationers, Parolees, and Gang Members

Condition No. 10 in pertinent part directs J.C. "not to associate with any individuals known by [him] to be on Probation or Parole (adult or juvenile)." Further, condition No. 15 directs J.C. "not to associate with anyone known to [him] to be a member of any gang as directed by [his] Probation Officer."

J.C. argues that these conditions implicate his freedom of association under the First Amendment and are unconstitutionally overbroad because they are not limited to associations for unlawful purposes. He points out that, while in juvenile hall, he

17

necessarily will associate with other probationers. Similarly, after his release, he likely will be required to attend rehabilitation programs as part of his probation and his fellow program participants may be gang members, probationers or parolees. J.C. argues further that interpreting these conditions to allow the probation officer to carve out exceptions for lawful purposes would impermissibly delegate the court's authority to the probation officer. Accordingly, J.C. requests that we modify condition Nos. 10 and 15 "to clarify that [J.C.] is permitted to associate with known gang members, probationers, and parolees for lawful purposes."

"The right to associate . . . 'may be restricted if reasonably necessary to accomplish the essential needs of the state and public order.' [Citations.] Such restrictions are 'part of the nature of the criminal process. [Citation.]' [Citation.] A limitation on the right to associate which takes the form of a probation condition is permissible if it is '(1) primarily designed to meet the ends of rehabilitation and protection of the public and (2) reasonably related to such ends.' " (*People v. Lopez* (1998) 66 Cal.App.4th 615, 627–628 (*Lopez*).)

"[T]he environment in which a probationer serves probation is an important factor on the likelihood that probation will be successfully completed. . . . By prohibiting defendant from associating with persons having a known criminal record, the court [places] a control over defendant which would assist her in successfully completing probation." (*People v. Robinson* (1988) 199 Cal.App.3d 816, 818 (*Robinson*).) Similarly, a court may impose probation conditions barring association with gang members to discourage involvement in gang-connected activity. (*Lopez*, *supra*, 66 Cal.App.4th at pp. 624–626.)

Courts have routinely upheld against constitutional challenge probation conditions like condition Nos. 10 and 15 even though they did not include any specification regarding the purpose of the association—so long as they contain a knowledge requirement. For example, in *Lopez*, defendant challenged as overbroad a condition that

18

directed him not to " 'associate with any gang members.' " (*Lopez*, *supra*, 66 Cal.App.4th at pp. 622, 627.)  The Court of Appeal agreed with defendant that the condition "suffers from constitutionally fatal overbreadth because it prohibits [defendant] from associating with persons not known to him to be gang members" and modified the condition accordingly.  (*Id*. at p. 628–629; accord *Leon*, *supra*, 181 Cal.App.4th at pp. 949–950, 954 [modifying a gang condition to direct that defendant not " 'associate with any person you know to be or the probation officer informs you is a member of a criminal street gang' "]; *H.C.*, *supra*, 175 Cal.App.4th at pp. 1071–1072 [modifying a probation condition to direct that the minor " 'will not associate with any person known to you to be on probation, on parole or a member of a criminal street gang' "]; *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1331 (*Spencer S.*); *In re Justin S.* (2001) 93 Cal.App.4th 811, 816.)  Thus, condition Nos. 10 and 15 are not, on their face, overbroad in all circumstances.

Further, we are not persuaded that condition Nos. 10 and 15 must include a limitation on the purposes of the association to pass constitutional muster.  A ban on a probationer's ability to associate with known probationers, parolees, and gang members does not impose a burden that is unaligned with the legitimate purpose of the restriction—rehabilitation and reformation.  (See *E.O.*, *supra*, 188 Cal.App.4th at p. 1153.)  "A probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' " (*Olguin*, *supra*, 45 Cal.4th at p. 382.)  To "associate" commonly means " 'to come or be together as partners, friends, or companions.' " (*People v. Albillar* (2010) 51 Cal.4th 47, 70, fn. 2 (conc. & dis. opn. of Werdegar, J.).)  Permitting a probation officer to generally monitor and restrict a probationer from joining as "partners, friends, or companions" with other probationers, parolees, and gang members appropriately prevents against future criminality (see *Spencer S.*, *supra*, 176 Cal.App.4th at p. 1331; *Robinson*, *supra*, 199 Cal.App.3d at p. 818) and dissuades a

19

probationer from taking " 'the first step to involvement in gang activity.' " (See *Lopez*, *supra*, 66 Cal.App.4th at p. 624.)

Moreover, we must presume that a probation officer will reasonably exercise the discretion afforded him or her by a probation condition and will not arbitrarily restrict a probationer's freedoms in a manner not tailored to rehabilitative or safety purposes. (See *Olguin*, *supra*, 45 Cal.4th at p. 383; see also *People v. Balestra* (1999) 76 Cal.App.4th 57, 68 [upholding a probation condition requiring submission to alcohol and drug testing at the discretion of the probation officer].) A probation officer cannot legitimately use condition Nos. 10 and 15—as J.C.'s argument suggests—to restrict his incidental contact with, for example, other probationers in juvenile hall or during mandated post-incarceration rehabilitation programs. Such use of these conditions is not sanctioned by their terms (which restrict only association) and the conditions "do[] not grant a probation officer the power to issue arbitrary or capricious directives that the court itself could not order." (See *People v. Stapleton* (2017) 9 Cal.App.5th 989, 996–997 (*Stapleton*).) Accordingly, we reject J.C.'s facial overbreadth challenge to condition Nos. 10 and 15.

### d. Condition No. 8 – Restriction on Changing Residence

Condition No. 8 provides: "You are not to change your place of residence from Monterey County or leave this state without permission of the Court or Probation Officer. Prior to change of residence, you are to notify your Probation Officer of the new address. Report each new address and phone number to your Probation Officer within 24 hours. Nothing in this provision shall prohibit minor's parents from changing their residence without prior approval of the Court or Probation Officer."

J.C. contends that various elements of this condition are unreasonable, overbroad, or vague.[10]

_____

[10] The Attorney General does not argue forfeiture regarding J.C.'s *Lent* unreasonableness challenge to condition No. 8. Rather, the Attorney General states that

20

J.C. argues first under *Lent* that his residence has no relationship to his offenses, moving out of Monterey County or leaving the state is not itself illegal, the condition has no apparent purpose, and "[t]here is no evidence in the record connecting the possibility of future criminality with [his] place of residence." He argues further that condition No. 8 is potentially inconsistent with condition No. 30[11] and the requirements that J.C. notify his probation officer of a new address are unreasonable as written. To ameliorate the alleged problems, J.C. recommends that we replace condition No. 8 with the following: " 'You are to notify your Probation Officer of your new address within 24 hours of changing your residence.' "

In light of the record here, we decide condition No. 8 is reasonably related to future criminality and the burden it places on J.C. is proportional to the legitimate interest it serves. (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1115, 1119.) J.C.'s offenses at the festival on September 15, occurred while he was a runaway. In the months leading up to that incident, J.C. had been running away from his parents' home regularly for two or three days at a time. While away from home, J.C. sought "to 'go party and look for cars' " and stayed with his adult friends. He also admitted to associating with gang members.

Based on these facts and circumstances, it is reasonable for the juvenile court to impose conditions that require J.C. to obtain permission before he moves out of the county or travels out of state and to report his address and phone number to his probation officer. These conditions enhance the ability of J.C.'s probation officer to monitor his

any issue of forfeiture or related ineffective assistance of counsel is "moot" because J.C. "will be able to make this objection at any dispositional hearing on remand." In light of the Attorney General's position, we will exercise our discretion to consider the merits of J.C.'s contention that condition No. 8 is unreasonable. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6; *People v. Catlin* (2001) 26 Cal.4th 81, 131, fn. 11; *Victor L.*, *supra*, 182 Cal.App.4th at p. 928.)

[11] Condition No. 30 directs J.C. to "reside only with [his] parents or approved guardian, unless specifically authorized to do so otherwise by [his] Probation Officer," until he "reach[es] the age of 18."

residence and whereabouts, protect him from negative influences, and ensure that he will have access to necessary rehabilitative services where he resides.[12] Moreover, condition No. 8 is not overly burdensome. It does not completely bar J.C. from moving out of Monterey County or leaving the state. It also does not necessarily create an irreconcilable conflict with the condition that directs J.C. to live with his parents until he turns 18. Condition No. 8 allows for a grant of permission to move out of Monterey County, and condition No. 30 is subject to exception upon approval of J.C.'s probation officer. We assume that neither the juvenile court nor the probation officer will arbitrarily withhold a grant of either permission to move out of the county or an exception to the parental residence requirement if requested by J.C. (See *Olguin, supra*, 45 Cal.4th at p. 383.) Therefore, we conclude that the juvenile court properly exercised its discretion when imposing condition No. 8 because it is both appropriate for adequate supervision and rehabilitation of J.C. and reasonably related to future criminality.

J.C. relies on *People v. Soto* (2016) 245 Cal.App.4th 1219, which found a similar residency requirement invalid under *Lent*. In *Soto*, nothing in the record suggested that leaving the county or state would affect defendant's rehabilitation. (*Id*. at p. 1228.) Nevertheless, the court in *Soto* acknowledged that its conclusion was dependent on the facts of Soto's case. (*Ibid*., fn. 3.) In contrast to *Soto*, here we conclude that the juvenile court, under the facts and circumstances pertaining to J.C., acted reasonably when imposing condition No. 8. In addition, we are not persuaded by J.C.'s reliance on *People v. Bauer* (1989) 211 Cal.App.3d 937 (*Bauer*) for the same reason.[13]

---

[12] We note that other unchallenged probation conditions require that J.C. spend nights at home, participate in counselling and other programs, and submit his residence to search by his probation officer or law enforcement.

[13] In *Bauer*, the court struck an adult defendant's probation condition requiring that his "residence be subject to his probation officer's approval." (*Bauer, supra*, 211 Cal.App.3d at p. 943.) The condition "seem[ed] to have resulted from defense counsel's suggestion that appellant's 'immaturity' may have resulted from his protective parents"

Moreover, " 'juvenile conditions may be broader than those pertaining to adult offenders. This is because juveniles are deemed to be more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' " (*In re R.V.* (2009) 171 Cal.App.4th 239, 247; see also *Ricardo P.*, *supra*, 7 Cal.5th at p. 1118.) Given J.C.'s behavioral history, intensive monitoring of his place of residence is reasonably related to ensuring that he receives the guidance and support necessary to change his trajectory over the course of his wardship. (See *In re R.V.*, at p. 246.) Accordingly, we reject J.C.'s *Lent* challenge to condition No. 8.

J.C. asserts further that condition No. 8 is "unconstitutional per se" because it impinges on his rights to travel and association and unconstitutionally overbroad because it is not closely tailored to its presumed purpose. Travel and association rights are not absolute and can be reasonably restricted. (*Moran*, *supra*, 1 Cal.5th at p. 406; *Lopez*, *supra*, 66 Cal.App.4th at pp. 627–628.) For the reasons discussed above regarding J.C.'s *Lent* challenge, we conclude condition No. 8 imposes a minimal burden on J.C.'s freedom to travel and associate and closely aligns with the legitimate purpose of monitoring his residence and ensuring his rehabilitation. (See *E.O.*, *supra*, 188 Cal.App.4th at p. 1153.) This conclusion accords with that of other courts which have rejected overbreadth challenges to similar residency restrictions. (See *In re G.B.* (2018) 24 Cal.App.5th 464, 468–471; *Stapleton*, *supra*, 9 Cal.App.5th at pp. 995–997; *People v. Arevalo* (2018) 19 Cal.App.5th 652, 656–658.)

J.C. argues finally that condition No. 8, "as written and in conjunction with condition number 30, is unconstitutionally vague . . . because it does not provide [J.C.] of fair warning of the conduct that would be required of him should his parents decide to

---

and the trial court's belief that appellant " 'need[ed] to grow up a little bit and away from [his parents].' " (*Id*. at p. 944.) The Court of Appeal concluded there was nothing in the record "suggesting in any way that appellant's home life . . . contributed to the crime of which he was convicted or is reasonably related to future criminality." (*Ibid*., fn. omitted.)

move to an unapproved location before he turned 18." He also asserts that condition No. 8 is "also unconstitutionally vague as to what the notification requirement precisely requires." We do not discern any unconstitutional vagueness in condition No. 8.

We must uphold a probation condition against a vagueness challenge " ' " 'if any reasonable and practical construction can be given to its language.' " ' " (*Hall*, *supra*, 2 Cal.5th at p. 501.) Here, condition No. 8 can be reasonably read to require that J.C. (1) receive the court's or his probation officer's permission to change his residence if he intends to move out of Monterey County or to leave the state; (2) notify his probation officer of any intended change in residence before changing his residence by providing the anticipated new address to the probation officer; (3) confirm his new address with his probation officer within 24 hours after the residence change; and (4) report a new phone number to his probation officer within 24 hours after obtaining the new phone number. Further, during the period that J.C. is required to live with his parents, if they decide to move out of Monterey County, J.C. will have to seek permission to move with them. The court or his probation officer will grant or deny that request. If the request is denied, then J.C. can seek authorization under condition No. 30 to reside with someone other than his parents or an "approved guardian." Given this plain reading, we conclude condition No. 8 is "sufficiently definite to inform the probationer what conduct is required or prohibited, and to enable the court to determine whether the probationer has violated the condition." (*Hall*, at p. 500.)

In sum, the juvenile court did not abuse its discretion in imposing condition No. 8 as worded, and the condition is neither overbroad nor vague.

### III. DISPOSITION

The juvenile court's dispositional order of October 22, 2019, is reversed and the matter is remanded to the juvenile court for limited purposes with the following instructions. The juvenile court shall exercise its discretion under Welfare and Institutions Code section 702, expressly declare whether the five offenses of vehicle theft

24

(count 1 [case No. 19JV000824]), assault likely to produce great bodily injury (counts 1 & 2 [case No. 19JV000832]), evading an officer (count 3 [case No. 19JV000832], and vehicle theft (count 4 [case No. 19JV000832]) are felonies or misdemeanors, and enter a new dispositional order. The juvenile court shall strike probation condition No. 18 requiring J.C. to grow and keep his head hair at least one inch in length. In all other respects, the terms and conditions of probation, ordered on October 22, 2019, and the judgment are affirmed.

_____
                                 Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Grover, J.

**H047569**
*People v. J.C.*